**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Gerald Klingner, Gary Klingner,
and G&G Investments, Inc.,

Plaintiffs,

v.

City of Braham; Terry Turnquist,
Mayor of the City of Braham;
Braham City Council and Council
Members 1-5; Sally Hoy, Braham
City Administrator; Beverly Ceaglske,
Community Development Director,
City of Braham; and Robert Knowles,
Police Chief of the City of Braham,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1667 ADM/AJB

---

Richard Diamond, Esq., and Mitchell Scott Paul, Esq., Minnetonka, Minnesota, appeared for and on behalf of the Plaintiffs.

Thomas Scott, Esq., Campbell Knutson, PA, Eagan, Minnesota, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

On January 18, 2001, the undersigned United States District Judge heard Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [Doc. No. 7] on Plaintiffs' claims for (1) "Deprivation of Property without Due Process of Law"; (2) "Negligent Performance of Public Duties"; (3) "Intentional Interference with Contractual Relations"; and (4) "Conspiracy to Deprive Plaintiffs of Civil Rights." Compl., ¶¶ 7-10. For the reasons set forth below, Defendants' motion is granted.

FEB 0 8 2001
FILED
FRANCIS E. DOSAL, CLERK FEB 0 8 2001
JUDGMENT ENTD
DEPUTY CLERK

## II. BACKGROUND

Gerald Klingner and Gary Klingner ("Plaintiffs") are the principal shareholders of G&G Investments, Inc., which holds the liquor license for "The Pub and Grill on Central" ("The Pub"). Compl., ¶ 1. Although there is a municipal off-sale liquor store, The Pub is the only on-sale liquor business in the City of Braham. Knowles Aff. ¶ 2.

The City of Braham ("the City") is a political subdivision of the State of Minnesota, located in the County of Isanti. The City's population is approximately 1,300 and its downtown area consists of six blocks. Knowles Aff. ¶ 2. Terry Turnquist ("the Mayor") is the Mayor of Braham. Turnquist Aff. ¶ 1. City Council Members 1-5 ("the Council") are the members of the City Council of Braham. Compl., ¶ 1. Sally Hoy is employed by the City as the city administrator. *Id.* Beverly Ceaglske is employed by the City as its community development director. *Id.* Robert Knowles ("Police Chief") is employed by the City as Police Chief. *Id.* Collectively, this group will be referred to as "Defendants."

In November of 1996, Plaintiffs purchased an existing establishment licensed to sell 3.2 beer in the City with the intent of upgrading it to an on-sale liquor establishment and restaurant. Compl., ¶ 3. Plaintiffs then applied for a transfer of the existing 3.2 beer license and for a hard liquor license. *Id.* On February 3, 1997, the City Council adopted Ordinance No. 166 allowing the issuance of on-sale hard liquor licenses in the City. Compl., ¶ 3.6. The City issued Plaintiffs a hard liquor license on March 3, 1997. *Id.* ¶ 3.7. However, before issuing an on-sale hard liquor license, Minnesota law requires the City to hold a special election to allow the voters to decide whether the City should have the power to issue such licenses. *See* Minn. Stat. § 340A.601, subd. 5. The City did not discover until December of 1999 its error in issuing the

initial liquor license prior to holding a special election. Plaintiffs first learned of the special election oversight in April of 1998. Compl., ¶ 5. On May 5, 1998, the City Council held a hearing and adopted Resolution 98-13 declaring the hard liquor license null and void. *Id.* Plaintiffs' 3.2 beer license remained in effect. The Council adopted a resolution scheduling a special election for June 23, 1998. *Id.* The referendum passed giving the City the power to issue liquor licenses and the Council then adopted a new ordinance authorizing the issuance of hard liquor licenses. *Id.* On July 8, 1998, Plaintiffs were issued a valid hard liquor license. *Id.*

Although Plaintiffs have never been charged with any zoning or building code violation, the City has discussed with Plaintiffs potential violations of the City's sign ordinance by banners being hung on the exterior of the business. Lind Aff. ¶¶ 2-3. On the weekend of March 7-8, 1998, the Mayor removed, from property located three blocks away, temporary banners advertising The Pub's business. Turnquist Aff. ¶ 2. The banners were in violation of the City's sign ordinance.

On the evening of April 3, 2000, Plaintiffs complained to the Police Chief about an excessive amount of police patrolling past The Pub that evening. Knowles Aff. ¶ 5. On May 8, 2000, Plaintiffs contacted the Police Chief concerning police patrolling activities on the evening of May 5, 2000. *Id.* ¶ 6. Plaintiffs complained that the police repeatedly walked back and forth in front of The Pub recording automobile license plate numbers. *Id.* Plaintiffs further complained that the police later followed patrons as they left The Pub, making them nervous. *Id.*

## III. DISCUSSION

If, on a motion for judgment on the pleadings, matters outside such pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment as

provided in Rule 56. Fed. R. Civ. P. 12(c). Because the factual material contained in the affidavits of both parties has been considered, and because plaintiff has had the opportunity to respond to the affidavits submitted by defendant, defendant's motion will be analyzed as one for summary judgment under Fed. R. Civ. P. 56. *See George v. City of St. Louis*, 26 F.3d 55, 57 (8th Cir. 1994) (holding that the district court properly treated defendant's motion to dismiss as one for summary judgment where defendant's motion was worded in the alternative and plaintiffs themselves submitted matters outside the pleadings).

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its Rule 56(c) burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When weighing the evidence offered by the parties on a motion for summary judgment, this Court must review the evidence and all inferences drawn from that evidence in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**A. Due Process claim**

The Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The possession of a protected life, liberty, or property interest is thus a condition precedent to the government's

obligation to provide due process of law. *Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The property interest must consist of "more than a unilateral expectation." *Id.* It must derive from "a legitimate claim of entitlement to it." *Id.* Property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Thus, the property interest in a liquor license must derive from Minnesota law.[1]

State law can create a property interest in a number of different ways. *See Craft v. Wipf*, 836 F.2d 412, 416 (8th Cir. 1987). State law can explicitly create a property right.[2] *Id.* Additionally, a state may "create a constitutionally protected interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion." *Id.* at 417 (citing *Hewitt v. Helms*, 459 U.S. 460, 470 (1983)). Finally, a state may create a protected property interest by "rules and understandings between the state and the other party." *Id.*

---

[1] There is no basis to conclude that Plaintiffs' claim involves a "liberty interest" because there is no contention that Plaintiffs' "good name, reputation, honor, or integrity" is at stake. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (holding unconstitutional a statute that authorized posting notice in retail liquor outlets the names of persons to whom liquor should not be sold, in absence of provision for notice or hearing prior to such posting).

[2] A municipal ordinance is a form of state law that can create a protected property interest to the extent that it is not invalid under state law. *See Robinson v. City of Montgomery City*, 809 F.2d 1355, 1356 (8th Cir. 1987) (per curiam).

In this case, however, no such property interest exists to support a due process claim. In *Hymanson v. City of St. Paul*, the Minnesota Supreme Court expressly stated that "[u]nder Minnesota law, there is no property right in a liquor license." 329 N.W.2d 324, 326 n. 1 (Minn. 1983); *accord Country Liquors, Inc. v. City Council of Minneapolis*, 264 N.W.2d 821, 826 (Minn. 1978) (holding that there is no property interest in an unissued liquor license); *Paron v. City of Shakopee*, 32 N.W.2d 603, 607-08 (Minn. 1948) (holding that city council had discretion to approve applications for liquor licenses and that liquor license holder was no more entitled to renewal than first-time applicant); *Arens v. Village of Rogers*, 61 N.W.2d 508, 519 (Minn. 1953) ("no person has a vested property right to engage in or continue to engage in the liquor business"); *see also Snyder v. City of Minneapolis*, 441 N.W.2d 781, 792 (Minn. 1989) (holding that revocation of a mistakenly issued building permit without any pre-deprivation hearing did not give rise to a due process claim because no property interest existed in the erroneous permit); *State v. Hovorka*, 110 N.W. 870, 871 (Minn. 1907) (holding that licenses issued under Minnesota law do not create property interests in renewal of the license that are protected by the Due Process Clause).

Minnesota law simply does not recognize a protected property interest in a liquor license. Here, the City Council adopted an ordinance to allow the issuance of liquor licenses in the City and then issued a liquor license to Plaintiffs. However, the ordinance under which the liquor license was issued was invalid under a Minnesota law requiring a special election to allow the voters to decide whether the City should have the power to issue such licenses. *See* Minn. Stat. § 340A.601, subd. 5. The City's error in issuing an invalid license does not create a property right for Plaintiffs. Plaintiffs are charged with knowledge of the laws regulating the granting of

licenses. *Anderson v. City of Minneapolis*, 178 N.W.2d 215, 217 (Minn. 1970).

After discovering the invalidity of the ordinance, the City Council declared Plaintiffs' liquor license null and void. The Council held a special election that resulted in the passing of the requisite City referendum, thereby allowing the Council to adopt a valid ordinance authorizing the issuance of liquor licenses. Shortly thereafter, Plaintiffs were issued a hard liquor license. Whether Plaintiffs' license situation is treated as a denial of a new license, a suspension, or a revocation of a preexisting license, no property interest exists that requires the City to provide due process. Moreover, the Council held a hearing before revoking the license. Plaintiffs cannot succeed on their due process claim.

**B. "Negligent Performance of Public Duties" claim**

Plaintiffs' negligence claim fails because the Defendants enjoy several types of immunity for their actions: legislative immunity, statutory immunity, and the public duty doctrine of immunity. "It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (internal quotations omitted). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* Here, the Council's acts were legislative. The Council passed an ordinance, adopted a resolution to hold a special referendum election, and passed a second ordinance. Furthermore, the Mayor's acts of signing the ordinances into law were legislative, even though he was an executive official, because such acts were an integral part of the legislative process. *See id.* at 55. The motive or intent with regard to the ordinances is

irrelevant, it is the nature of the legislative act that confers immunity. *See id.* at 54. The Council and the Mayor are protected by legislative immunity.

Statutory immunity protects governmental conduct at the planning or policymaking level and prevents courts from second-guessing discretionary activities by legislative or executive officials. *See Watson v. Metro. Transit Comm'n.*, 553 N.W.2d 406, 412 (Minn. 1996); *Olson v. Ramsey County*, 509 N.W.2d 368, 371 (Minn. 1993). "A claim based upon performance of, or failure to perform, a discretionary function or duty cannot be asserted against a municipal corporation, and this is true whether or not the discretion is abused." *Anderson*, 178 N.W.2d at 217 (citing Minn. Stat. § 466.03(6)). Minnesota law made the City's initial issuance of the liquor license to Plaintiffs illegal. *See* Minn. Stat. § 340A.601, subd. 5. The City did not have the discretion to issue a liquor license in violation of state law. *Anderson*, 178 N.W.2d at 217. Although the City was in error, Plaintiffs are charged with knowledge of the laws regulating the granting of licenses. *Id.* Thus, any damages in reliance on the invalid license were incurred at Plaintiffs' risk. *Id.*; *Snyder*, 441 N.W.2d at 786 (citing *Anderson* for the proposition that an "owner still could not recover damages because he was charged with knowledge of applicable laws and any expenses were incurred at the owner's own risk").

The City also enjoys public duty immunity because governmental functions performed on behalf of the general public are immune from attack by a negligence action. *McNamara v. McLean*, 531 N.W.2d 911, 915 (Minn. 1995). Although a negligence suit may be brought if a regulatory scheme creates a private duty to individual members of the public, there is no such private duty in this case. *See Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 804 (Minn.1979) (holding that a private duty may be created by reasonable reliance on the

municipality's representations and conduct of a regulatory scheme). The Minnesota liquor license statutes are designed not for the benefit of particular sellers of liquor, but rather for the protection of the general public. *See Connolly v. Nicollet Hotel*, 95 N.W.2d 657, 665 (Minn. 1959) ("It is the policy of the law . . . to protect the public from social consequences of intoxicating liquor."); *Stabs v. City of Tower*, 40 N.W.2d 362, 367 (Minn. 1949). Because the liquor licensing regulations are intended to benefit the general public, there is no duty owed to license applicants as individuals, such as Plaintiffs. Again, any alleged reliance by Plaintiffs on the City's initial issuance of the invalid liquor license was not reasonable because Plaintiffs are charged with knowledge of the applicable licensing laws. *See Anderson*, 178 N.W.2d at 217. Plaintiffs' negligence claims are barred by these immunity doctrines.

**C. Intentional Interference with Contractual Relations claim**

To state a claim for tortious interference with contractual relations, Plaintiffs must show that "(1) a contract existed; (2) the alleged wrongdoer had knowledge of the contract; (3) the alleged wrongdoer intentionally interfered with the contract; (4) the alleged wrongdoer's actions were not justified; and (5) damages were sustained as a result." *Guiness Import Co. v. Mark VII Distribut., Inc.*, 153 F.3d 607, 613 (8th Cir. 1998) (citing *Sip-Top, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 832 (8th Cir. 1996) (applying Minnesota law)); *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994). Plaintiffs provide no evidence to support their conclusory allegations of intentional interference with contractual relations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). Plaintiffs fail to demonstrate the existence of any contract with which the city intentionally interfered, that the City had knowledge

of such a contract, that the City intentionally interfered with such a contract, or that the City's actions were not justified. Therefore, Plaintiffs fail to meet their burden of establishing facts sufficient to protect the claim from summary judgment.

**D. Equal Protection claim**

Plaintiffs' "Conspiracy to Deprive Plaintiffs of Civil Rights" claim is essentially an equal protection claim based on the alleged selective enforcement of the City's ordinances. An equal protection analysis begins by identifying a fundamental right or a suspect classification to determine the level of scrutiny a court must give to government action. Selling intoxicating liquors is not a fundamental right and bar owners are not a suspect class. *See Brown v. Lake Geneva*, 919 F.2d 1299, 1302 (7th Cir. 1990); *Glicker v. Michigan Liquor Control Comm'n.*, 160 F.2d 96, 98 (6th Cir. 1947). Therefore, Plaintiffs' equal protection claim is analyzed under the rational basis test. *See More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993); *Moreland v. United States*, 968 F.2d 655, 660 (8th Cir. 1992). To prevail under the rational basis test, Plaintiffs must show that they are similarly situated with persons who are treated differently by the City and the City has no rational basis for the dissimilar treatment.[3] *Id.* Under the rational basis analysis, even when similarly situated persons are treated differently, state action is presumed constitutional and "will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426 (1961).

---

[3] Although Plaintiffs do not appear to argue the invalidity of the ordinance itself on equal protection grounds, this claim also would not succeed under the rational basis analysis. *See Bannum, Inc. v. City of St. Charles*, 2 F.3d 267, 271 (8th Cir. 1993) (upholding the ordinance because it "bears a rational relation to a legitimate government objective"). A court must not overturn an ordinance "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [City's] actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

The rational basis test is a difficult standard for a challenger to satisfy and here, Plaintiffs' allegations are inadequate to support an equal protection claim. Plaintiffs may not rest on "mere allegations" but must demonstrate the existence of specific facts that create a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 249. Plaintiffs fail to identify a similarly situated person who has received dissimilar treatment. Plaintiffs allege that the City, through its police force, has harassed their business by driving past The Pub an excessive number of times and by conspicuously writing down license plate numbers of patrons. Compl., ¶ 6. Such conduct does not rise to the level of an equal protection claim. Plaintiffs further allege that the City has selectively enforced building and zoning code violations against them. However, no criminal charges or civil enforcement actions have been commenced against Plaintiffs relating to any building code or zoning violations. Lind Aff. ¶¶ 2-3. Plaintiffs fail to show that they received different treatment than others who are similarly situated because The Pub is the only on-sale liquor business in the six-block downtown of Braham.

Moreover, assuming *arguendo* that dissimilar treatment exists, Plaintiffs do not present evidence that any alleged dissimilar treatment was irrational. Under the rational basis test, the City's actions are presumed constitutional and will not be set aside if any state of facts reasonably may be conceived to justify them. *See McGowan*, 366 U.S. at 426. Plaintiffs have failed to establish the existence of elements essential to their case, and on which they will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Summary judgment is appropriate.

Plaintiffs fail to state cognizable legal claims. Plaintiffs' dissatisfaction with their treatment by the City's officials is resolved more properly through the political process, not the

courts.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment [Doc. No. 7] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: February 8, 2001

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd